### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, INC., | : |
| | : |
| Plaintiff, | : Civil Action No. |
| | : 11-6140-NLH-JS |
| v. | : **OPINION** |
| | : |
| PAUL KOENIG, | : |
| | : |
| Defendant. | : |

**Appearances:**
JAMES EATON HEAVEY
THOMAS B. LEWIS
STARK & STARK PC
P.O. BOX 5315
PRINCETON, NJ 08543
*Attorney for plaintiff*

THOMAS PATRICK KELLY , III
KELLY LAW OFFICES LCC
3000 ATRIUM WAY
SUITE 291
MOUNT LAUREL, NJ 08054
*Attorney for defendant*

**HILLMAN, District Judge**

Before the Court is defendant's motion for reconsideration of the Court's Order dated February 6, 2012, granting in part and denying in part plaintiff's motion for injunctive relief.  For reasons explained below, defendant's motion for reconsideration will be denied.

### I.   BACKGROUND

The factual background was set forth in the Court's previous Opinion and will not be repeated here, except in

pertinent part.  See Ameriprise Financial Services, Inc. v.
Koenig, No. 11-6140, 2012 WL 379940 (D.N.J. Feb. 6, 2012).

        Defendant Paul Koenig seeks reconsideration of the
Court's Order entered February 6, 2012, granting Ameriprise
Financial Services Inc.'s ("Ameriprise") motion for injunctive
relief.  See id.  The Court granted Ameriprise injunctive relief
with regard to its breach of contract claim and ordered Koenig,
and any in concert with him, to, inter alia,: 1) return all
Ameriprise's corporate, client, confidential, and proprietary
information in excess of that permitted by the Protocol,
including but not limited to, all documents in original, copied,
computerized or any other form; and 2) purge, delete or remove
all of Ameriprise's corporate, client, confidential, and
proprietary information in excess of that permitted by the
Protocol contained in any computer, hardware, database, storage
device or files in his possession.  See id. at *10.

        Koenig asks that the Court delete the section of its
Order requiring him to return the confidential information to
Ameriprise on grounds that it would result in compulsory self-
incrimination in violation of the Fifth Amendment.  Koenig states
that Ameriprise filed a "Statement of Claim" with the Financial
Industry Regulatory Authority ("FINRA") claiming that he violated
the Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C.
§ 1030.  The CFAA criminalizes certain computer-fraud crimes and

2

also creates a civil cause of action.[1]  See Pulte Homes, Inc. v. Laborers' Intern. Union of North America, 648 F.3d 295, 299 (6th Cir. 2011).  Koenig argues that by requiring him to "self-determine" what records are not lawfully in his possession, if any, the Order may violate his Fifth Amendment rights against self-incrimination and, therefore, seeks reconsideration of this Court's Order.

---

[1]     The CFAA makes it unlawful to "knowingly and with intent to defraud, access[ ] a protected computer without authorization, or exceed[ ] authorized access, and by means of such conduct further[ ] the intended fraud and obtain[ ] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period. 18 U.S.C.A. § 1030(a)(4). For example, section 1030(a)(2) of the CFAA provides for criminal penalties to be imposed on a person who:

> intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains—... © information from any protected computer if the conduct involved an interstate or foreign communication....

See LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130-31 (9th Cir. 2009), citing 18 U.S.C. § 1030(a)(2).  Section 1030(a)(4) provides for criminal penalties to be imposed on a person who:

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value....

Id., citing 18 U.S.C. § 1030(a)(4).

The statute further provides that "[a]ny person who suffers damage or loss" may obtain "injunctive relief or other equitable relief" against the violator.  See § 1030(g).  Ameriprise did not raise a CFAA claim before this Court.

## II.  DISCUSSION

### A.  Standard for Motion for Reconsideration

In seeking reconsideration, the moving party bears a heavy burden and the motion can only be granted if the party "shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

Reconsideration is not appropriate where the motion only raises a party's disagreement with the Court's initial decision. Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F.Supp. 159, 163 (D.N.J.1988); see also Schiano v. MBNA Corp., No. 05-CV-1771, 2006 WL 3831225, *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the Court will not suffice to show that the Court overlooked relevant facts or controlling law, ..., and should be dealt with through the normal appellate process[.]") (citations omitted); United States v. Compaction Sys. Corp., 88 F.Supp.2d 339, 345 (D.N.J.1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration].").  Accordingly, "courts in this District

4

routinely deny motions for reconsideration that simply re-argue the original motion." Altana Pharma AG v. Teva Pharm. USA, Inc., No. 04-2355, 2009 WL 5818836, at *1 (D.N.J. Dec. 1, 2009).

Koenig argues that reconsideration of the Court's Order is appropriate on grounds that compliance with the Court's Order will violate his Fifth Amendment right against self-incrimination.

### B.   Fifth Amendment

The self-incrimination clause of the Fifth Amendment reads: "No person ... shall be compelled in any criminal case to be a witness against himself." Doe v. U.S., 487 U.S. 201, 207, 108 S.Ct. 2341, 2346 (1988). "As the Court has often held, the Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" Baxter v. Palmigiano, 425 U.S. 308, 316, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

The Fifth Amendment does not, however, permit a party to assert a "blanket privilege." National Life Ins. Co. v. Hartford Acc. and Indem. Co., 615 F.2d 595, 596 (3d Cir. 1980) (holding that a witness may not invoke a blanket Fifth Amendment privilege prior to the answering of any questions). "The fifth

amendment shields against compelled self-incrimination, not legitimate inquiry, in the truth-seeking process." Id. at 598.

Here, Koenig argues that the act of identifying the confidential client information and returning such information to Ameriprise has a communicative aspect and would compel him to concede his possession of the information.  The Court recognizes that such acts may implicate the protection of the Fifth Amendment.  See Fisher v. U.S., 425 U.S. 391, 410, 96 S.Ct. 1569 (1976) (acknowledging that act of producing evidence in response to a government subpoena for tax documents had communicative aspects and would indicate a belief that the papers are those described in the subpoena).

The Supreme Court ruled, however, that the Fifth Amendment does not automatically apply in such cases.  Id. Rather, even if complying with the subpoena raises the element of compulsion, "the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment." Id.  The Supreme Court did not supply a bright-line rule for determining whether compliance in turning over documents amounts to incriminating testimony, finding that such issues "do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof."  Id.  Ultimately, in Fisher, the Supreme Court

6

ruled that however incriminating the contents of the taxpayer's subpoenaed work papers, the act of producing them did not itself involve testimonial self-incrimination.  Id. at 410-11.

The facts in this case show that Koenig has possession of the information because Ameriprise has provided an affidavit stating that Koenig forwarded confidential information and financial plans, above what is permitted by the Protocol, to his private email address shortly before he intended to resign. Ameriprise identified the information, the clients' names, and the date and manner in which Koenig took the information. Ameriprise has already questioned Koenig in deposition and apprised him that they have such information.  There is no issue whether Koenig possesses the information.  It is simply a matter of Koenig complying with the Court's Order to return the information already identified by Ameriprise.

The Fisher case is instructive because in that case, as here, the existence of the documents is a foregone conclusion. Id. at 411.  As stated by the Supreme Court, "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers."  Id. The Supreme Court denied invocation of the Fifth Amendment and found that by enforcing the subpoena "no constitutional rights [were] touched.  The question is not of testimony but of

surrender." Id. (citing In re Harris, 221 U.S. 274, 279, 31 S.Ct. 557, 558, 55 L.Ed. 732, 735 (1911)).

Moreover, the confidential information that Koenig is required to return are not his "private papers." Id. at 407, 414; Bellis v. U. S., 417 U.S. 85, 87, 94 S.Ct. 2179, 2182 (1974) ("Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony)(citing Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886)). The confidential information is Ameriprise's client information and financial plans removed by Koenig. See Bellis v. U. S., 417 U.S. at 88 ("an individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally.").

Ameriprise argues that since Koenig did not invoke the Fifth Amendment during his deposition and voluntarily responded to questions that he lost the benefits of the privilege against self-incrimination. "[F]ederal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." Rogers v. U.S., 340 U.S. 367, 71 S.Ct. 438 (1951) (citations omitted); see Minnesota v. Murphy, 465 U.S. 420, 440, 104 S.Ct. 1136 (1984) (concluding that since defendant revealed

incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled).  We need not reach the question of whether Koenig "waived" his Fifth Amendment rights[2] because, as explained above, compelling Koenig to comply with this Court's Order does not involve the "testimonial" and "incriminating" aspects required to invoke Fifth Amendment protections.  In other words, even if Koenig asserted his Fifth Amendment rights during his deposition, the result would not be different in this case.  Koenig was not compelled to give such information.  Ameriprise already knew that Koenig had emailed confidential information to his private email address.

Finally, Ameriprise also argues Koenig should not be permitted to assert his right against self-incrimination because it is not seeking to impose criminal liability on Koenig pursuant to the CFAA.  While the CFAA does carry criminal penalties, Ameriprise is seeking a civil cause of action.  Moreover, Ameriprise is not the government and only the Department of Justice can bring a criminal prosecution.  There is no evidence

_____

[2]      Although "[w]aiver of constitutional rights ... is not lightly to be inferred," a Fifth Amendment privilege must be claimed.  Smith v. United States, 337 U.S. 137, 150, 69 S.Ct. 1000 (1949); see Murphy, 465 U.S. at 427.  Here, Koenig never stated in his deposition that he was asserting his Fifth Amendment privilege.  It was not until this Court ordered him to return the information removed from Ameriprise that he first raised his Fifth Amendment rights.  Koenig cannot belatedly raise his right against self-incrimination to avoid compliance with this Court's Order.  Id.

Ameriprise has asked them to do so, there are no parallel
proceedings or investigations, or even the slightest hint of any
reason why the Department of Justice would care about, while
important to the parties, a relatively small dispute over money
and customers between two brokerage firms that will be resolved
eventually in this case or the related arbitration.  Koenig has
utterly failed to present any facts that show that he faces a
real danger of criminal prosecution.  This is simply a red
herring interposed to forestall the remedy plaintiff has shown it
is entitled to and to delay compliance with this Court's order.[3]
See Aruanno v. Spagnuolo, 292 Fed.Appx. 184, 186 (3d Cir. 2008)
("the Fifth Amendment protects against 'real dangers, not remote
and speculative possibilities.'", citing Zicarelli v. N.J. State
Comm'n of Investigation, 406 U.S. 472, 478, 92 S.Ct. 1670, 32
L.Ed.2d 234 (1972)).  "The central standard for the privilege's
application has been whether the claimant is confronted by
substantial and 'real,' and not merely trifling or imaginary,
hazards of incrimination."  Marchetti v. U.S., 390 U.S. 39, 53,

---

[3] The rule that the danger or risk of criminal prosecution
be real serves an important purpose.  Every disloyal employee who
takes unauthorized materials theoretically commits a from of
theft, electronic or otherwise.  If such an employee could
routinely or frivolously raise the shield of the fifth amendment,
a civil litigant could never receive the relief sought in this
case - the return of its purloined materials.  The Fifth
Amendment is a shield against self-incrimination, not a sword to
use in defense of meritorious civil claims or to hinder the
legitimate injunctive power of the Court.

88 S.Ct. 697, 705 (1968).  However, even if Koenig established a real possibility of criminal prosecution, compliance with the Court's Order does not invoke the protections of the Fifth Amendment.[4]

### IV.  CONCLUSION

For the foregoing reasons, Koenig's motion for reconsideration will be denied.

                              S/Noel L. Hillman
                              NOEL L. HILLMAN, U.S.D.J.

Dated: March 1, 2012

At Camden, New Jersey

---

[4]  Plaintiff also states in his motion "Obviously, any right to arbitration was waived when the plaintiff submitted to the jurisdiction of this Court."  In response, defendants submitted the Affidavit of Thomas B. Lewis, Esq., stating that since the current dispute arose between Ameriprise, a member firm of FINRA, and Koenig, while a financial advisor with Ameriprise, that the parties are required to submit the dispute to FINRA for arbitration pursuant to FINRA Code of Arbitration, procedure section ("FINRA Code") 13200.  Pursuant to FINRA Code 13804, a party may seek a temporary restraining order in a court of competent jurisdiction if a statement of claim is contemporaneously filed with FINRA.  Koenig has not argued that Ameriprise failed to follow proper FINRA procedure and has not provided any authority to the contrary.  Accordingly, Ameriprise has not waived its right to arbitrate this dispute.  See Walker v. Morgan Stanley Smith Barney LLC, No. 10-02378, 2011 WL 1603490, at *3 (E.D.Pa. Apr. 27, 2011) (granting motion to compel arbitration in accordance with FINRA's Code of Arbitration Procedure for Industry Disputes and dismissing action without prejudice).